UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-61702-CIV-ALTONAGA/SELTZER

PATRICK CALHOUNE,

        Plaintiff,

vs.

FORD MOTOR COMPANY <u>et al.</u>,

        Defendants.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court upon Ford Motor Company's Motion Requesting
an Adverse Inference Instruction Based on Spoliation of Evidence [ECF No. 39], which was
referred by the District Court to the undersigned for disposition [ECF No. 53] pursuant to
28 U.S.C. § 636 and the Magistrate Rules of the Local Rules for the United States District
Court of the Southern District of Florida.

## I.    BACKGROUND

This is a products liability action arising out of a single vehicle accident involving
Plaintiff Patrick Calhoune ("Calhoune" or "Plaintiff"). The accident occurred on September
21, 2015, while Plaintiff was driving his 2006 Ford Mustang GT ("the Vehicle") on Interstate
95. Plaintiff swerved to avoid striking a "phantom" vehicle that made an improper lane
change and lost control of the Vehicle. The Vehicle left the roadway and traveled onto the
grass shoulder, where it overturned in a multiple roll event before coming to a final rest on
its roof. Plaintiff was conscious after the accident and sustained serious injuries, resulting
in the amputation of his left arm.

Plaintiff's insurer, Progressive Casualty Insurance Company ("Progressive"), declared the vehicle a total loss. On November 6, 2015, Plaintiff transferred title of the Vehicle to Progressive. Neither Plaintiff nor Progressive took any steps to preserve the Vehicle.

Plaintiff filed this action in the Circuit Court for Broward County, Florida, against Ford and others on July 24, 2017. The Complaint [ECF No. 1-2] alleges that the Vehicle was defective in that the Vehicle's air bag, seat belt, and roll over protection systems failed due to either system malfunction or design defects. Ford filed an Answer [ECF No. 1-2] denying liability and raising several affirmative defenses, including that Plaintiff's injuries were cause in whole or in part by his own negligent acts or omissions, that the crash and Plaintiff's resulting injuries were caused by the "abuse, misuse, or alteration" of the Vehicle, and that Ford has been prejudiced in its defense "to the extent that evidence relevant to this case may have been destroyed or altered by others" [ECF No. 1-2]. Ford removed the case from state court on the basis of diversity of citizenship [ECF No. 1].

The case is set for trial in March 2019. The parties have completed discovery and exchanged expert witness reports. Ford moves for an adverse inference instruction at trial because it never had the opportunity to inspect the Vehicle prior to Plaintiff's transferring the title to Progressive and prior to Plaintiff's filing suit.

II.     LAW

"Spoliation is defined as the 'destruction of evidence' or the 'significant and meaningful alteration of a document or instrument.'" Green Leaf Nursery v. E.I. Dupont de Nemours and Company, 341 F.3d 1292, 1308 (11th Cir. 2003) (quoting Aldrich v. Roche Biomedical Labs., Inc., 737 So. 2d 1124, 1125 (Fla. 4th DCA 1999)). A district court has

broad discretion in deciding whether to impose sanctions for the spoliation of evidence. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). "This power derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. Accordingly, sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." Id. (internal citation omitted). Spoliation sanctions may include: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." Id. at 945.

To establish spoliation, the moving party must show "(1) that the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense." Wilsey v. NCL (Bahamas) Ltd., 2017 WL 7803804, at *2 (S.D. Fla. Nov. 3, 2017) (quoting Managed Care Sols., Inc. v. Essent Healthcare, Inc., 736 F. Supp. 2d 1317, 1323-24 (S.D. Fla. 2010)). The duty to preserve "arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable." Point Blank Sols., Inc. v. Toyobo America, Inc., 2011 WL 1456029, at *24 (S.D. Fla. Apr. 5, 2011).

Once a moving party has established spoliation, it must then make a showing of bad faith before a court may impose sanctions for the spoliation. Flury, 427 F.3d at 946-47; Penalty Kick Mgmt Ltd. v. Coca Cola Co., 318 F.3d 1284, 1294 (11th Cir. 2003) (adverse inference not warranted from lost evidence where no showing of bad faith); Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) ("In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is

predicated on bad faith. Mere negligence in losing or destroying the records is not enough

for an adverse inference. . . .") (internal citations and quotation marks omitted).

Bad faith can be established through circumstantial evidence if

> (1) evidence once existed that could fairly be supposed to
> have been material to the proof or defense of a claim at issue
> in the case; (2) the spoliating party engaged in an affirmative
> act causing the evidence to be lost; (3) the spoliating party did
> so while it knew or should have known of its duty to preserve
> the evidence; and (4) the affirmative act causing the loss
> cannot be credibly explained as not involving bad faith by the
> reason proffered by the spoliator.

In re Complaint of Boston Boat III, L.L.C., 310 F.R.D. 510, 520 (S.D. Fla. 2015).

III.    DISCUSSION

Ford argues that Plaintiff's disposal of the Vehicle entitles it to an inference at trial

that, as to all issues that would have been revealed, corroborated, or enhanced by the

physical evidence found on the Vehicle, the evidence would have favored Ford and been

adverse to Plaintiff.  The threshold issues, therefore, are whether Plaintiff had a duty to

preserve the Vehicle and, if so, whether Plaintiff acted in bad faith in transferring title to the

Vehicle to his insurance carrier without providing for preservation of the vehicle.

A.    Duty to Preserve

The Court concludes that at the time Plaintiff transferred the Vehicle he was not

under a duty to preserve it.  "The Eleventh Circuit has made clear that a duty to preserve

evidence only 'arises once litigation is pending or reasonably foreseeable.'" Jetport, Inc.

v. Landmark Aviation Miami, LLC, 2017 WL 7732869, at *3 (S.D. Fla. Jul. 24, 2017)

(quoting Graff v. Baja Marine Corp., 310 Fed. Appx. 298, 201 (11th Cir. 2009).  "To be

reasonably foreseeable, litigation must have been contemplated – mere awareness of

potential liability is insufficient to trigger a duty to preserve evidence." Id. (citations omitted).

Ford argues that Plaintiff was contemplating or reasonably should have known that litigation against Ford was likely when he transferred the Vehicle's title. First, Ford notes that on the evening of the accident, Plaintiff had an awareness that there was a problem with the car's safety systems that caused or contributed to the accident. At his deposition, Plaintiff testified: he realized the air bags did not deploy; he felt at the time that the seatbelt did not hold him low enough in the seat; and he did not think that he turned the wheel hard enough to cause the drift he was feeling as the car moved toward the shoulder of the road [ECF No. 39, p.3]. Second, Ford argues that the severity of Plaintiff's injuries, combined with his awareness of possible issues with the Vehicle, indicates that Plaintiff was contemplating or at least should have been aware of the likelihood of litigation against Ford before he transferred the Vehicle to Progressive.

The Court does not draw the same conclusion. The record contains no objective evidence that would support a finding that litigation was reasonably foreseeable when Plaintiff released the Vehicle to Progressive. Cf. Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC, 845 F. Supp. 2d 1342, 1358 (N.D. Ga. 2011) (litigation was more than a "theoretical possibility" where evidence established plaintiff had sent letter to defendant warning about future litigation and management had discussions about pursuing litigation). Ford had not requested that the Vehicle be retained. Indeed, Ford could not have made such a request because Ford had not been notified of the likelihood of litigation. Cf. Flury, 427 F.3d at 945 (duty to preserve evidence existed where plaintiff's lawyer notified defendant about the accident within two weeks of the accident and defendant advised of

its desire to inspect vehicle).  Additionally, there is no evidence that Plaintiff had consulted with a lawyer at any time prior to transferring the Vehicle to Progressive, let alone evidence that he had developed an intent to file suit.  Cf. Oil Equip. Co., Inc., 661 Fed. Appx. at 657 (plaintiff accused of spoliation knew that litigation was a possibility: its counsel sent a demand letter two weeks prior to the challenged destruction); Wilsey, 2017 WL 7803804, at *2 ("Plaintiff had a duty to preserve [the evidence] . . . when Plaintiff's counsel notified Defendant that he had been retained to represent Plaintiff . . . because, at that time, Plaintiff knew, through her counsel, that litigation with Defendant was probable.").

"The existence of a potential civil action and/or the duty to preserve evidence must be based on more than the mere possibility that something may occur at some time in the future."  Winn-Dixie Stores, Inc. v. Dollar Tree Stores, Inc., 2012 WL 12877648, at *1 (S.D. Fla. Mar. 12, 2012) (finding that investigation into possibility of claim did not give rise to a duty to preserve evidence).  In Jetport, Inc., 2017 WL 7732869, at *4, the court declined to infer from an aircraft collision that litigation was reasonably foreseeable:

> [W]hile an argument could be made that litigation is reasonably foreseeable any time two aircrafts collide with each other, 'that is clearly not always true, and the Court is unwilling to draw that inference under the specific circumstances of this case.'

Id. (quoting Stanfill v. Talton, 851 F. Supp. 2d 1346, 1365 (M.D. Ga. 2012) (finding no duty to preserve video despite inmate who died while in custody where record contained no evidence that Defendants had been provided with notice that litigation was imminent or even contemplated)).  Stated simply, the mere occurrence of the accident and Plaintiff's contemporaneous awareness of safety issues do not give rise to a presumption that litigation was contemplated or even likely at that time.  The Vehicle was transferred to

Progressive within six weeks of the accident, but the litigation did not commence until nearly two years after the accident. This timeline does not support Ford's argument that litigation was reasonably foreseeable in November 2015.

For these reasons, the Court concludes that Plaintiff did not have a duty to preserve the Vehicle between the date of the accident and November 6, 2015, the date it was transferred to Progressive.

B.      Bad Faith

Even assuming that Plaintiff did have a duty to preserve the Vehicle, the Court concludes that spoliation sanctions would not be appropriate because there is no evidence that the transfer of the Vehicle was undertaken in bad faith.    Bashir, 119 F.3d at 931 (spoliation sanctions require a finding of bad faith).    As discussed above, there is no evidence that Plaintiff was contemplating litigation or was on notice that Ford wanted to inspect the Vehicle. Furthermore, the decision to transfer to the insurance company the title to a Vehicle declared a total loss is not an unreasonable financial decision for an insured.    Nothing presented by Ford suggests that Plaintiff intended to hide or conceal evidence or to deprive Ford of discovery. For these reasons, the Court concludes that sanctions for spoliation are not warranted in this case.

C.      Prejudice to Defendant

Even if the Plaintiff were found to have acted in bad faith in not preserving the Vehicle for inspection by Ford, the Court concludes that Ford is not unreasonably prejudiced by the unavailability of the Vehicle. Indeed, Ford acknowledges that dismissal would be inappropriate as a sanction because Ford's expert witnesses have been able to complete their investigations and render opinions as to the issues in this lawsuit. Indeed,

7

the expert reports, which are attached to Ford's Motion [ECF Nos. 39-7; 39-8; and 39-9], reference the fact that the experts reviewed over 200 post-accident photographs of the Vehicle. The experts have all rendered opinions within a reasonable degree of certainty and did not qualify their opinions. Indeed, although the experts generally state that access to the Vehicle could confirm their conclusions, none of the experts state that lack of access to the Vehicle prevented them from reaching their conclusions.

Equally important, Ford does not argue that Plaintiff's experts enjoyed an advantage of being able to inspect the Vehicle prior to its transfer. The parties, therefore, stand on equal footing with respect to the availability of the evidence. Accordingly, the Court concludes that a sanction of an adverse inference instruction is not warranted in this case.

IV. CONCLUSION

For the reasons set forth herein, the Court concludes that Ford has not established spoliation of evidence by Plaintiff or that the sanction of an adverse inference instruction is warranted in this case. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Ford Motor Company's Motion Requesting an Adverse Inference Instruction Based on Spoliation of Evidence [ECF No. 39] is **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 28th day of January 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished counsel via CM/ECF